**MURPHY MANAGEMENT COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 4–67 Civ. 100.

United States District Court
D. Minnesota,
Fourth Division.

May 5, 1969.

Sidney S. Feinberg, of Robins, Davis & Lyons, Minneapolis, Minn., for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson and Daniel J. Dinan, Atty's., Dept. of Justice, Washington, D. C., and Patrick J. Foley, U. S. Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM DECISION

NORDBYE, Senior District Judge.

In this proceeding, plaintiff, a Minnesota corporation, seeks to recover certain federal income taxes disallowed by the Internal Revenue Service which were paid for the fiscal years ending July 31, 1962, 1963 and 1964, in the amount of $2,450 for each of these fiscal years as the annual amortization of the cost of the acquisition of a ten-year management contract with the Union Mutual Insurance Company, together with statutory interest thereon.

A recital of some of the facts as disclosed by the evidence seems necessary. The Union Mutual Insurance Company was formed in 1936. This company was organized as a mutual insurance company under the laws of the State of Minnesota by Carl L. Forsberg and his wife, Lorraine E. Forsberg. Apparently there were three organizers in all, but the third organizer, a nominee of the Forsbergs, resigned or at least became inactive shortly thereafter, so to all intent and purposes this was a mutual insurance company owned and operated by the Forsbergs, with only two directors —the Forsbergs. Up until about the year 1953, the company was dormant and did no insurance business whatsoev-

er. It commenced writing some insurance in 1953 with premiums totaling some $20,000. In 1954 the premiums totaled some $30,000, and in 1955 $50,000.

On or about December 15, 1955, to become effective January 1, 1956, the Forsbergs, who remained in sole control of the company as directors, entered into a contract in behalf of the company whereby they appointed themselves as general managers of "its home office functions," and as such were clothed with all of the duties necessary to operate the business of a mutual insurance company. A copy of the management contract is attached to the complaint herein and marked Exhibit A. The duties which devolved upon the Forsbergs under that contract are set forth in Paragraphs 1 and 2, reading,

"1. The Company hereby appoints C. L. Forsberg and L. E. Forsberg, jointly and severally, as general managers of its home office functions. As such they shall oversee and direct *the following operations, with* authority to exercise such authority as they deem necessary to accomplish proper results:

"(a) To prepare policies and other forms and premium rate schedules including changes as required; obtaining approval thereof and filing of same with the State Insurance Department.

"(b) To supervise all underwriting functions, including review of applications, calculation of premium, preparation and issuance of policies and endorsements thereon, and handling of cancellations.

"(c) To supervise all accounting work, including preparation of agents' accounts, payment of commissions, billing and collection of premiums, recording of all receipts and disbursements, and maintenance of policy expiration records.

"(d) To supervise preparation of statistical data necessary for analysis of earned premium, loss and expense ratios.

"(e) To supervise making of financial statements for the Board of Directors, required reports for the State Insurance Department and tax returns.

"(f) To oversee the investigation and adjustment of claims.

"(g) To oversee the handling of company correspondences, procurement of necessary supplies, and incidental, routine office matters.

"2. The Company also hereby appoints C. L. Forsberg and L. E. Forsberg, jointly, severally and exclusively as general agents for the maintenance of present business and procurement of new business. As such they shall oversee and direct the activities of the Company's local agents with respect to the following, exercising such authority as they deem necessary for proper results.

"(a) To appoint agents on behalf of the Company throughout its territory.

"(b) To acquaint such agents with the Company's lines of insurance and underwriting rules; to see to it that they are adequately supplied.

"(c) To fix commission schedules payable to agents, to determine the amount of credit to be extended to them, and to execute agency contracts on behalf of the Company.

"(d) To handle advertising and promotion work; to assist local agents in the procurement of business."

Paragraph 6 reads,

"6. As combined compensation and overwrite commission for performing the executive functions listed in paragraph 1 and for acting as general agent as stated in paragraph 2, the Managing Agents, or the survivor of them or the corporation to which their rights herein are assigned, as the case may be, shall be paid by the Company a sum equal to ten per cent of the written, less return, premium, payable semi-monthly on an estimated basis and adjusted quarterly on an actual basis."

Paragraph 9 provides,

"This agreement shall be perpetual."

On July 30, 1959, an amended agreement was entered into between the Forsbergs as the two directors and the two Forsbergs as Managing Agents, apparently in anticipation of Murphy's taking over Union, whereby the terms of the management contract of the Forsbergs of December 15, 1955, was amended so that the period thereof was for a period of ten years and authorizing the then present management agents to transfer and assign said management contract as amended, a copy of which is attached to the complaint herein marked Exhibit B. The amended contract further provided,

"3. In the event that the Managing Agents shall transfer and assign said Employment Contract as hereby amended, in consideration of past services to the Company, and in consideration of such further services by way of advice or consultation as shall be requested or required of them with respect to the management and operation of the Company, the Company agrees as follows:

"(a) To designate and appoint the Managing Agents, and the survivor of them, as general agents of the Company, but not on an exclusive basis, with the usual rights and obligations applicable to general agents, with authority to write fire, windstorm, extended coverage and homeowners package policy insurance of the sort and kind presently being written by the Company through lending institutions.

"(b) To pay to the Managing Agents, and the survivors of them, on all of the Company's business, one per cent of the gross written, less return, premiums, not to exceed the sum of Ten Thousand Dollars ($10,000.00) in any one (1) fiscal year, payable for the preceding year on March 15 of the

following year, said payments to be made for the term of ten (10) years from the 1st day of August, 1959, provided that, in the event of the death of both Managing Agents, such payments shall cease upon the death of the latter.

"(c) In the event during the said ten (10) year period, or the balance of the lives of either of the Managing Agents, whichever is less, the general agency contract referred to in subparagraph (a) above is cancelled, abrogated or abated for any reason, the payments under the terms of subparagraph (b) above shall be one per cent (1%) of the gross written, less return, premiums, said payments, however, under these conditions to be subject to a maximum of Twelve Thousand ($12,000.00) Dollars per fiscal year."

On the same day that the amended contract between the Forsbergs and Union was executed, the Forsbergs entered into an agreement with J. E. Murphy, assignor of the present plaintiff. This agreement, after reciting that the Forsbergs were the Managing Agents of Union, stated that the Forsbergs desired to sell and that Murphy desired to purchase "subject to the contingencies hereinafter recited, all of FORSBERGS' right, title and interest in and to the COMPANY and the said contract, except as herein provided." Then follows the agreement wherein, among other things, the Forsbergs agreed that "they will, at their own expense, do whatever is necessary to qualify the COMPANY to write full coverage automobile insurance in the State of Minnesota" and that they would arrange at the next annual meeting of the Company to accomplish the election of a new Board of Directors consisting of "individuals designated by MURPHY," and that they would cause "to be assigned to MURPHY, his appointee or nominee, all of the benefits, right, title and interest they hold under the said management contract," except those benefits which would be retained

by them as noted in the amended management contract of July 30, 1959. And the agreement with Murphy further provided that upon the payment of the "cash consideration as provided for herein," the Forsbergs would "turn over, surrender and deliver to MURPHY direction and control of the COMPANY." The Forsbergs further agreed that they would forever thereafter use their best efforts as policyholders, proxyholders, directors and officers to continue in effect control of the said Company by Murphy or his nominee. The contract of July 30, 1959, between the Forsbergs and Murphy further provided that the sum of $24,500 was to be the "sole, entire, full and complete consideration; * * * for the complete and final accomplishment of all the requirements, conditions and obligations of this agreement." Then in Paragraph 9 of the July 30, 1959, contract, the Forsbergs agreed to refrain from soliciting proxies except as may be specifically requested by Murphy or his appointee "so as to in any way at any time hereafter defeat the spirit, purpose or intentions of this agreement or take from MURPHY or his appointees, or deprive them of, control of the COMPANY."

It was on August 7, 1959, that after the payment by Murphy of the stipulated sum of $24,500, the Forsbergs formally assigned to the Murphy Management Company, nominee of Murphy, all their right, title and interest in their management contract, as amended, with Union. After the agreement of August 7, 1959, was completed, the plaintiff took over Union Mutual Insurance Company, together with the office furniture used by the Forsbergs during their ownership of that company and retaining the two office employees of the Forsbergs, and moved the location of the insurance company to a new address selected by it.

We need not concern ourselves with the question of the original management contract between Union and the Forsbergs being perpetual. This provision probably rendered the contract voidable

at the will of either party, but it did not prevent the terms of the contract to be amended so as to provide for a ten-year period instead of being in perpetuity. This amendment was perfected before the contract was assigned to plaintiff. However, the vulnerability of plaintiff's claim here is that the payment of $24,500 was not made solely for the management contract of the Union Mutual Insurance Company. In fact, the assignment of the management contract by the Forsbergs to plaintiff of August 7, 1959, states no specific consideration for the assignment. The uncontradicted evidence here clearly indicates that in addition to the management contract Murphy bought all the interest the Forsbergs had in this company for the consideration of $24,500, subject to certain rights retained by them in the amended agreement between the Forsbergs and Union of July 30, 1959. In other words, the consideration for the payment of $24,500 by Murphy was not limited to a management contract of the Company. In addition, the Forsbergs agreed, in consideration for the money paid to them, that Murphy should have full control of the directors to be elected, that the Forsbergs would refrain from any adverse activities in the future to impair that control, and that they would forthwith turn over, surrender and deliver to Murphy complete control of the Company. As further evidence of the various items which entered into the consideration for the $24,500 paid by Murphy, reference may be made to the deposition of Mr. Forsberg wherein he testified that he agreed, as he expressed it, as one of the considerations for the $24,500 paid, to service one of the large accounts of Union in 1959 which totaled some $100,000 a year; that he agreed to do this because of his close acquaintance with the directors and management of that particular company; and that after the contract was signed, he did "perpetuate"—to use his expression—this account for some three years thereafter with no further consideration to him from Murphy or his nominees.

The uncontradicted showing herein leads to only one conclusion, and that is that the $24,500 paid to the Forsbergs by Murphy was the consideration inuring to him or his nominees to step into the shoes, so to speak, of the Forsbergs as directors and operators of the Union Mutual Insurance Company, subject only to the rights of the Forsbergs as reflected in the agreement between them and the company on July 30, 1959. In that the evidence strongly establishes that the assignment of the management contract in question was not the only consideration for the benefits which Murphy obtained for his payment of $24,500, it must follow that plaintiff has not sustained the burden of proof and that its attempt to amortize for tax purposes this payment of $24,500 over the ten-year period, which purported to be the life of the management contract, cannot be sustained.

The above may be considered as the Court's Findings of Fact, and as Conclusions of Law therefrom judgment must be entered in favor of the defendant. It is so ordered. An exception is reserved.